Tawona Sharmin RILES, Appellant

v.

The STATE of Texas

NO. PD–1757–13

Court of Criminal Appeals of Texas.

Delivered: February 4, 2015

John Bennett, Attorney at Law, P.O. Box 19144, Amarillo, TX 79114, for Appellant.

John L. Owen, Assistant District Attorney, 501 S. Fillmore, Suite 5A, Amarillo, TX 79101, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

Meyers, J., delivered the opinion of the Court in which Keller, P.J., and Keasler, Hervey, Alcala, Richardson, Yeary, and Newell, JJ., joined.

Appellant pled guilty to possession of a controlled substance with intent to deliver. Adjudication · was deferred, and Appellant was granted community supervision. After a year and a half, her community supervision was revoked, and she was sentenced to seven years in prison and ordered to pay all of the court costs, including her court appointed attorney fees. Appellant then appealed, arguing that the trial court erred in ordering her to pay the attorney fees because there was no evidence of her ability to pay. The court of appeals held that this claim was forfeited because she did not raise it in an appeal from the original Order of Deferred Adjudication. *Riles v. State*, 417 S.W.3d 606 (Tex.App.-Amarillo 2013). We granted Appellant's petition for discretionary review to determine whether Appellant forfeited her claim even though the amount and certainty of the attorney fee was unknown to her at the time community supervision was imposed.

## FACTS

Appellant was charged with possession of a controlled substance and appointed counsel after the trial court found her to be indigent. On March 3, 2010, she pled guilty to the offense with no agreed recommendation on punishment. The signed plea papers admonished Appellant that:

The defendant understands that in addition to any sentence imposed by the Court there are mandatory costs of Community Supervision, including but not limited to: Costs of Court, Community Supervision fees (up to $60 per month), restitution to the victim(s), pay-

ments for DPS Lab ($140), fees for court appointed attorney, fees related to testing and treatment, payments to Crime Victims Compensation Fund (up to $100), payment to Crime Stoppers ($50), payments to The Bridge Children Advocacy Center, electronic monitoring, and class/instruction related to their specific needs as may be ordered by their probation officer or the Court.

By entering this Plea and Disposition Agreement the defendant affirmative states to the Court that he/she has the financial resources to pay the costs associated with Community Supervision in the specific case and that their personal financial situation is expected to be stable through out the term of Community Supervision. The defendant understands that it is the obligation of the defendant to notify his/her probation officer of any significant change in his/her financial situation that would impact his/her ability to pay the fees and costs associated with Community Supervision.

Appellant also signed an application for community supervision that stated that if she were granted community supervision, she would "reimburse the county in which the prosecution was instituted for compensation paid to appointed counsel for defending [her] in the case." Finally, Appellant's Order of Deferred Adjudication, which she signed that same day, stated that she was ordered to pay a five-hundred-dollar fine and "all court costs including Court Appointed Attorney Fee." It also stated, "Court Costs: see attached."

The judge granted Appellant deferred adjudication and placed her on community supervision for eight and one half years. The following day, Appellant's attorney submitted an "Attorney Fee Voucher" for $1,000, which was approved. This voucher was filed by the district clerk on March 9, 2010. The district clerk's bill of costs,

which lists the $1,000 for the court appointed attorney fee, was issued on March 19, 2010.

No additional filings were made in Appellant's case until August 25, 2011, when the State moved to proceed with adjudication and revoke her community supervision. One year later, on August 23, 2012, a judgment adjudicating guilt against Appellant was signed which included an order for Appellant to pay all fines, court costs, and restitution "as indicated on the attached Bill of Costs." The next day, the district clerk issued the updated bill of costs which cited the $1,000 assessment for "Attorney Fee(s)—Original Plea Agreement."

## COURT OF APPEALS

Appellant filed a notice of appeal from the judgment adjudicating guilt, arguing that the trial court erred in ordering her to pay the attorney fee without any evidence that she had the ability to pay it. The court of appeals held that she had forfeited this claim by not raising it in an appeal to the order of deferred adjudication. *Riles*, 417 S.W.3d at 607.

In coming to this conclusion, the court of appeals relied on two of our decisions, *Wiley v. State*, 410 S.W.3d 313 (Tex.Crim. App.2013), and *Manuel v. State*, 994 S.W.2d 658 (Tex.Crim.App.1999). *Id.* at 607–09. In *Wiley*, the court of appeals explained, the appellant also objected to the order that he pay his court appointed attorney fees upon revocation of his community supervision because the evidence was insufficient to show that he had the ability to pay them. This Court rejected the appellant's claim, stating that, because he was aware of the requirement that he pay the court costs, he would have known to challenge the sufficiency of the evidence at the time and, therefore, forfeited the claim by choosing to not appeal. *Wiley*,

410 S.W.3d at 320–21. In *Manuel*, the appellant pled guilty, his adjudication was deferred, and he was granted community supervision. After this community supervision was revoked, the appellant appealed, arguing that the evidence at the original plea proceeding was insufficient to prove his guilt. *Manuel*, 994 S.W.2d at 660. We held that, exactly like "regular community supervision," a defendant given deferred adjudication community supervision may raise issues related to the plea proceeding only in an appeal taken when the supervision is first imposed. *Id.* at 662.

The court of appeals concluded that these two cases left it no choice but to hold that Appellant forfeited her claim by not making it until her community supervision was revoked. *Riles*, 417 S.W.3d at 609. Although we discussed that the appellant in *Wiley* had notice of the obligation to pay attorney's fees, the court of appeals declined to interpret that to mean that the issue could have been appealed had the appellant not been aware of the obligation. *Id.* Without an express overruling of *Manuel*, the court of appeals chose to apply it as written. *Id.*

Justice Pirtle dissented, asserting that the procedural default consideration present in *Wiley* and *Manuel* is not present in this case because Appellant did not know the amount of her attorney fee at the time she was placed on deferred adjudication. *Id.* at 612. He argued that it was determined only that Appellant would make some monthly payments and that, expecting to be able to meet this obligation, she would not have needed to appeal this determination. *Id.* at 611. Further, because there was no evidence to support the imposition of the fees, Justice Pirtle would have reformed the judgment against Appellant to specify that "court costs" did not include attorney fees. *Id.* at 612.

Two weeks after this opinion, another bill of costs was issued that reflected an additional $3,185 for attorney fees for the revocation hearing. Appellant filed a motion for rehearing on this issue and others, each relating to fees. The court of appeals denied rehearing because new issues may not be raised through a motion for rehearing. *Riles v. State*, 417 S.W.3d 606 (Tex. App.-Amarillo 2013) (op. on reh'g.). Justice Pirtle again dissented on the issue of attorney's fees, arguing that Appellant should not be barred from raising the issue because the $3,185 did not appear in the original bill of costs. *Id.* at 614.

Subsequently, Appellant filed a petition for discretionary review challenging the original imposition of the attorney fees. We granted Appellant's petition to determine whether *Wiley v. State* applies where the amount and certainty of the attorney fee are unknown at the time that community supervision is imposed.

## ARGUMENTS OF THE PARTIES

Appellant agrees that *Wiley v. State* requires that challenges to attorney fees that are assessed as a condition of community supervision be brought up on an appeal from the original imposition of the community supervision. However, Appellant argues, this requirement is conditioned on the defendant having knowledge of both the existence and amount of the attorney fee, neither of which the appellant in this case had. Appellant points out that, unlike in *Wiley,* her bill of costs was not issued until 16 days after she was placed on deferred adjudication. Therefore, at the time her community supervision was imposed, she not only did not know the amount of the fee, she also could not be certain that such a fee would even be assessed.

Appellant also points to *Landers v. State,* 402 S.W.3d 252 (Tex.Crim.App. 2013), in which we held that a defendant who was assessed a fee for an appointed prosecutor pro tem after the proceedings had adjourned, was able to complain about the fee on appeal because she never had an original opportunity to object. Appellant asserts that *Landers* was based on the premise that the fee was not imposed in open court, and the appellant and her attorney could not have been assumed to have seen the bill of costs in time to object to it, so no procedural default occurred. Appellant contends that the court of appeals's decision in her case does not follow the holdings of *Landers* and *Wiley.*

The State, however, argues that Appellant was required to challenge the attorney fee on a direct appeal from the judgment imposing it and that by not doing so, she waived the issue. The State also asserts that Appellant assented to liability for the fee and represented on her plea papers that she had the resources to pay the fees that were made conditions of her community supervision. The fact she did not know the exact monetary amount at the time is of no significance.

The State goes on to point out that the cases that Appellant relies on are distinguishable from her own and do not support her position. *Landers,* for example, did not involve a plea proceeding, there was no discussion of imposing court costs on the appellant at the trial or sentencing, and the appellant was granted a direct appeal. 402 S.W.3d 252. In *Wiley,* the court held that the appellant had procedurally defaulted by failing to appeal at the time he was placed on community supervision. 410 S.W.3d at 320. Further, the State argues, *Wiley* allows Appellant to be charged with the knowledge of the requirement that she pay her attorney fee because she signed documents related to her plea and application for community

supervision that discussed the obligation to pay. *Id.* at 320–21.

## ANALYSIS

■ We agree with the State's position that we can conclude that Appellant had knowledge of the attorney fee and, therefore, could have challenged the sufficiency of the evidence supporting payment of the fee in a direct appeal from the initial order for deferred adjudication. Because *Manuel* requires that any issue related to the original plea proceeding be taken only in an appeal to the original order of deferred adjudication, we hold that Appellant procedurally defaulted this claim by failing to so. 994 S.W.2d at 661–62.

Contrary to the court of appeals's interpretation, *Wiley* does, in fact, premise procedural default on an appellant's knowledge of, and failure to challenge, an issue. The record in this case reflects multiple points where Appellant acknowledged the obligation to pay the attorney fee. In Appellant's written plea, she signed the section entitled "Court Costs and Fees" which admonished her that there were mandatory costs of community supervision, that could include the fee for her court appointed attorney. Appellant also signed her Application for Community Supervision which stated that she would reimburse the county for the compensation of appointed counsel. Finally, Appellant's Order for Deferred Adjudication, which she signed, specifically indicated that she would be required to pay all court costs including the "Court Appointed Attorney Fee." It also noted on the first page, directly next to where her five-hundred-dollar fine was listed, that for "court costs: see attached." It does not seem to be disputed that the bill of costs was not attached to the order at that time, and Appellant should have taken pause at this. However, she did not. And with her signatures, Appellant expressly acknowledged having read and understood the stipulations of her deferred adjudication community supervision.

With this direct evidence of Appellant's acknowledgment of the existence of the attorney fee, we hold that the lack of knowledge of the exact amount of the fee does not make Appellant's case. The issue brought in her appeal was that there was no evidence of her ability to pay the fee. This is an argument against the assignment of the fee as a whole, not against a portion of it or against a determination that it should be paid as a lump sum versus paid on a payment plan. Because Appellant asserted that there was not sufficient evidence to support the requirement that she pay an attorney fee at all, the dollar amount of the fee would be inconsequential. With the knowledge that she was being directed to pay some attorney fee, she would have known to appeal, regardless of the amount of that fee. Therefore, she did have enough information to have known to challenge the assignment of the fee with a direct appeal to the deferred adjudication order, but failed to do so, and subsequently forfeited her sufficiency claim.

■ However, even if the specific dollar amount (and not just the existence) of the fee did matter to an appeal, which would require the appellant to wait to see the bill of costs before appealing, the appellant would not simply be left with no options if it were filed late. If the appellant was somehow unable to appeal in time after receiving the bill of costs, the appellant could file for an extension of time. The only requirements to receive an extension are that the notice of appeal be filed within fifteen days of the expiration of the deadline for filing notice and that the party explain the facts that show the need for the extension. TEX.R.APP. P. 26.3. If a bill

of costs were filed so late as to cause the appellant to not be able to appeal it within the specified time period, an extension of time to appeal should be granted.

Here, however, Appellant filed no appeal until her community supervision was revoked two years later. We made clear in *Manuel* and *Wiley* that those issues that an appellant can raise in a direct appeal from the initial judgment must be raised, and that failing to do so results in procedural default. *Manuel*, 994 S.W.2d at 661–62; *Wiley*, 410 S.W.3d at 320–21. Appellant had knowledge that she was to be charged for her appointed attorney fee, as evidenced by the multiple admonishments that she signed, but she forfeited her claim by foregoing her initial appeal.

Our decision today applies only to the $1,000 attorney fee originally imposed when Appellant was placed on deferred adjudication. We make no decision regarding the $3,185 in attorney fees assigned for Appellant's revocation hearing because that amount is not encompassed within the ground upon which we granted review, which addresses only the attorney fee for representation "at the time community supervision is imposed."

## CONCLUSION

Because of Appellant's knowledge of the issue of the attorney fee and her failure to appeal it from the original imposition of her deferred adjudication, she procedurally defaulted the issue and cannot now revive it. Therefore, although the court of appeals misinterpreted *Wiley*, it correctly concluded that Appellant's claim was forfeited and its judgment is affirmed.

Keller, P.J., filed a concurring opinion in which Hervey, J., joined. Alcala, J., filed a concurring opinion. Johnson, J., filed a dissenting opinion.

Keller, P.J., filed a concurring opinion in which Hervey, J., joined.

This case would be like our recent decision in *Mercer v. State* if the trial attorney's fee had not been listed in the bill of costs.[1] In *Mercer*, we held that the court of appeals erred in focusing on whether an incarceration-reimbursement fee was a valid condition of probation when the appropriate question was whether the fee could be imposed in the judgment that revoked probation. In the present case, the Court mentions a number of contexts in which appellant was informed that she would be required to pay the attorney's fee: in the plea papers, in her application for probation, and in the conditions of probation listed in the judgment.[2] But in each of these instances, appellant was notified only that she would be required to pay the fee as a condition of probation. Had these been the only places in which the obligation to pay the attorney's fee had been mentioned, appellant would not have been placed on notice that the fee was being imposed as an independent obligation under the judgment, and her first notice that the fee would be an independent obligation

1. No. PD–1711–13, 451 S.W.3d 846, 2015 WL 180396 (Tex.Crim.App. January 14, 2015).

2. The plea papers include the attorney's fee in a section entitled:

   COURT COSTS AND FEES
   For Person on Community Supervision
   The body of this section states that the defendant understands that "there are mandatory costs of Community Supervision including ... fees for court appointed attorney." The body of this section further provides that "the defendant affirmatively states to the Court that he/she has the financial resources to pay the costs associated with Community Supervision in their specific case and that their personal financial situation is expected to be stable through out [sic] the term of Community Supervision."

would have been when the fee was imposed upon revocation.[3]

But the bill of costs listed the attorney's fee, and the judgment explicitly incorporated the bill of costs with its notation "see attached." Although the bill of costs was not available at trial, appellant knew at trial (because of that notation) that the bill of costs was forthcoming and would be incorporated into the judgment. Especially given the absence of any discussion in the plea papers or plea hearing specifically *limiting* the attorney's fee to conditions of probation, appellant's attorney should have realized that the fee might appear in the not-yet-issued bill of costs, and if it did, it would become an independent obligation under the judgment. Moreover, the fee did appear in the bill of costs in time for appellant to file a notice of appeal.[4] Under these circumstances, I agree that appellant forfeited her claim under *Manuel v. State*[5] by failing to raise it in an appeal from the judgment deferring adjudication.

I join the Court's opinion.

Alcala, J., filed a concurring opinion.

I join the majority opinion in its decision to affirm the judgment of the court of appeals upholding the trial court's imposition of attorney's fees against Tawona Sharmin Riles, appellant. *See Riles v. State*, 417 S.W.3d 606, 609, 613 (Tex. App.—Amarillo 2013) (original op. & op. on reh'g). Like the majority opinion, I conclude that, by failing to appeal ·the trial court's order that she pay $1,000 in attorney's fees at the time when she was initially granted deferred adjudication, appellant

forfeited her right to later complain about those fees in an appeal from the trial court's judgment adjudicating guilt. Additionally, I agree with the majority opinion's decision not to address the $3,185 that appellant was ordered to pay for her representation during the revocation proceeding because that amount is not included in appellant's ground for review. I write separately to discuss additional matters that have informed my decision to join this Court's majority opinion.

First, with respect to the majority opinion's conclusion that appellant forfeited her complaint as to the $1,000 amount by failing to raise that complaint in an appeal from the trial court's order placing her on community supervision, I note that, although the trial court failed to make appellant aware of the precise amount of court costs that it would order her to pay as a condition of her community supervision, it is reasonable to infer from this record that appellant was aware of the approximate amount of the costs. It is reasonable to expect that, when appellant signed the written acknowledgments that she was able to pay attorney's fees, in explaining those documents to appellant, trial counsel, who necessarily would have known the approximate amount of the fees incurred by him in representing appellant during the plea proceeding, would have conveyed that information to appellant in advising her with respect to her affirmative representation to the trial court that she had the ability to pay the specified costs. The record thus supports the inference that appellant's counsel would have told appel-

---

**3.** *See Wiley v. State*, 410 S.W.3d 313, 320 (Tex.Crim.App. 2013) (discussing difference between an attorney's fee as a condition of probation and as an independent obligation under the judgment).

**4.** Appellant waived appeal, but she could have attacked the waiver as involuntary with re-

spect to a complaint about the bill of costs, which was issued after her waiver. *See Ex parte Delaney*, 207 S.W.3d 794,798 (Tex.Crim. App. 2006).

**5.** 994 S.W.2d 658 (Tex.Crim.App. 1999).

lant the approximate amount of attorney's fees when she represented to the trial court that she had the ability to pay those fees; appellant thus had knowledge of and failed to timely assert her present challenge that the trial court did not consider her ability to pay the attorney's fees. *See id.* I, therefore, also agree with this Court's majority opinion that, in *Wiley v. State,* this Court limited procedural default under *Manuel v. State* to situations in which an appellant has knowledge of and fails to challenge an issue related to court costs, but that here, appellant had knowledge of and failed to timely assert her present challenge that the trial court did not consider her ability to pay the $1,000 in attorney's fees. *See Wiley v. State,* 410 S.W.3d 313, 318 (Tex.Crim.App. 2013); *Manuel v. State,* 994 S.W.2d 658, 661–62 (Tex.Crim.App. 1999).

Although I agree with this Court's majority opinion's analysis with respect to procedural default as to the court costs for $1,000 in attorney's fees, I additionally observe that, even if her appeal were not procedurally forfeited, appellant would lose on the merits of her complaint in light of the record that shows sufficient evidence that the trial court did consider her ability to pay. A complaint raised pursuant to Article 26.05(g) is a sufficiency-of-the-evidence challenge. *Mayer v. State,* 309 S.W.3d 552, 556 (Tex.Crim.App. 2010); *see also Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Article 26.05 of the Code of Criminal Procedure requires a trial court, when ordering reimbursement of attorney's fees, to consider a defendant's ability to pay those fees in part or in whole. Tex.Code Crim. Proc. art. 26.05(g). Article 26.05(g) states, "If the court determines that a defendant has financial resources that enable [her] to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay." *See id.* Because the record affirmatively shows that appellant represented to the trial court that she was able to pay court costs for attorney's fees as part of the conditions of her community supervision, and because it reasonably suggests that counsel would have informed her about the approximate amount of those fees, appellant cannot show that the trial court did not consider her ability to pay attorney's fees or that the evidence is insufficient to establish that she had the ability to pay the fees during the course of her community supervision. Even reaching the merits, therefore, appellant's claim should be denied.

Second, although I agree with the majority opinion's decision not to address the $3,185 amount that appellant was ordered to pay for her representation during the revocation proceedings, I observe that, because she did not receive a Bill of Costs listing that amount until after her appellate brief was filed, the posture of this case is identical to the situation in *In re Daniel,* 396 S.W.3d 545, 549 (Tex.Crim.App. 2013). This Court, in *Daniel,* held that a defendant who is assessed court costs after expiration of the period of time during which he could have filed a direct appeal or a challenge under Article 103.008 could obtain relief through a petition for mandamus. *Id.* This Court treated Daniel's habeas writ as a writ of mandamus when the record showed that he had no adequate remedy by appeal because the bill of costs was sent to him years after the judgment was rendered, and the record showed a clear entitlement to relief. *Id.* As I noted in my concurring opinion in *Perez v. State,* mandamus relief pursuant to *Daniel* "may be available for those defendants who do not obtain a bill of costs until after the

time for filing a direct appeal or a challenge through article 103.008 has expired." *Perez v. State*, 424 S.W.3d 81, 88 (Tex. Crim.App. 2014) (Alcala, J., concurring).

With these comments, I join the majority opinion in affirming the judgment of the court of appeals.

Johnson, J., filed a dissenting opinion.

Article 42.12, sec. 11(b) of the Texas Code of Criminal Procedure states, "A judge may not order a defendant to make any payments as a term or condition of community supervision, except for fines, court costs, restitution to the victim, and other conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law. The court shall consider the ability of the defendant to make payments in ordering the defendant to make payments under this article."

Appellant clearly had appointed counsel, and was, therefore, indigent. Our case law provides that, once declared indigent, a defendant remains so until a change in financial circumstances is shown. Tex. Code Crim. Proc. art. 26.04(p); *Wiley v. State*, 410 S.W.3d 313, 317 (Tex.Crim.App. 2013). Article 26.05(g) states, "If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay." Attorney fees are not fines, restitution, or related personally to the rehabilitation of the defendant. Nor are they court costs unless and until the trial court, not the probation officer or the county collection department, determines that the defendant has an ability to pay, in whole or in part, the billed attorney fees: the defendant's financial circumstances have to have changed such that the defendant is no longer indigent. I find nothing in this record to demonstrate that the trial court made an inquiry as to appellant's ability to pay. I therefore must conclude that the trial court had no authority to assess attorney fees because it did not consider appellant's ability to pay. Without authority to act, the court's order was void. A void order may be challenged at any time. *See Nix v. State*, 65 S.W.3d 664, 667–68 (Tex. Crim.App. 2001) ("A void judgment is a 'nullity' and can be attacked at any time.").

I also agree with Justice Pirtle that the majority of the court of appeals reads *Wiley v. State*, 410 S.W.3d 313 (Tex.Crim. App. 2013), too broadly. He set out the timing of the events at issue.

> Order of deferred adjudication signed on March 3, 2010, purports to have an attached bill of costs.
>
> Attorney fee voucher signed March 4, 2010.
>
> Bill of costs was issued on March 19, 2010, two weeks after the order was signed.
>
> Motion to revoke filed on August 25, 2011.
>
> Appellant adjudicated on August 22, 2012.
>
> Judgment is signed on August 23, 2012, order purports to have a bill of costs attached.
>
> Bill of costs issued on August 24, 2012.

Justice Pirtle then presented his reasons for concluding that appellant did not forfeit her claim.

> In *Wiley* the Court of Criminal Appeals clarified a split between the intermediate courts of appeal concerning whether an appellant can raise a sufficiency of the evidence claim concerning the reimbursement of court-appointed attorney's fees imposed during an origi-

nal plea proceeding resulting in straight probation in a later appeal from the revocation of that community supervision. There, the Court held that a defendant is procedurally defaulted under *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex.Crim.App. 1999), from asserting error that "could readily have been raised ... in a direct appeal from the initial *judgment* imposing community supervision." *Wiley*, 410 S.W.3d at 320 (emphasis added). In reaching its conclusion, the Court of Criminal Appeals emphasized that the "record in this case shows the appellant was well aware of the existence *and amount* of attorney fees that were imposed for his court appointed representation during the [original] plea proceedings." *Id.* In *Wiley* the judgment itself contained a handwritten notation on the face of the document stating the exact dollar amount of attorney's fees being ordered. The opinion of the Court also emphasized the fact that the *Bill of Costs* was dated the same day as the original *judgment* and was *attached* to that judgment, giving rise to the presumption that the appellant was fully aware of the *full extent of the court's order* when he signed the judgment. *Id.*

While the majority here reaches the conclusion that the pertinent facts of this case were substantially akin to those in *Wiley,* that simply is not the case. *Wiley* involved the revocation of an order of "straight probation," where, in the original proceeding, a judgment was entered in addition to an order stating the terms and conditions of community supervision; whereas this case involves the revocation of an *order* deferring an adjudication of guilt where no judgment "independently imposed an obligation to repay attorney fees—'as court costs.'" *Id.* at 320. *Wiley* involved a *judgment,* signed by the defendant, expressly stating the exact dollar amount of attorney's fees subsequently being contested; whereas here, the *Order of Deferred Adjudication* references an attachment (not even in existence, much less actually attached when executed) concerning an undetermined amount of attorney's fees (to be subsequently awarded), which were to be paid in accordance with a payment arrangement (to be subsequently made) with a representative of the county "Collections Department."

The majority also posits that *Manuel* brings this case into the context of a procedural default because, like here, the revocation of an order of deferred adjudication was involved in that case. In *Manuel* the Court of Criminal Appeals held that an appellant was procedurally barred from contesting the sufficiency of the evidence relating to the issue of *guilt* in any proceeding other than "appeals taken when community supervision is originally imposed...." *Manuel,* 994 S.W.2d at 661. Because Manuel could have questioned the sufficiency of the evidence substantiating his guilt immediately after being placed on community supervision, he was procedurally barred from raising that issue when his deferred adjudication was revoked. *Id.* But *Manuel* is factually distinguishable from this case. In *Manuel* the appellant sought to contest a finding essential to the original order of deferred adjudication—a finding of guilt. Whereas here, the Appellant is contesting a factual determination—the ability to repay $1,000 in court-appointed attorney's fees—that was not even made at the time she was placed on deferred adjudication. At best, all the trial court determined in this case was that the Appellant had the ability to make some monthly payment (as yet undetermined)

that would be made in accordance with a payment agreement that would be negotiated in the future with the county collections department. [FN4 Contrary to the majority, I believe *Manuel* limits the extent of forfeiture only to those issues which an appellant had notice of at the time of the original plea. Here, the Appellant did not have notice of the full extent of attorney's fees ordered because the amount of those fees was, as yet, undetermined. Furthermore, having the ability to make a monthly payment is not the same thing as having the ability to pay the lump sum amount, a finding essential to the imposition of attorney's fees under article 26.05 of the Texas Code of Criminal Procedure. Therefore, it cannot be said that Appellant had notice of that essential finding.]

Accordingly, the procedural default considerations in *Manuel* and *Wiley* simply are not present in this case and it is neither reasonable nor practical to assume that a defendant being placed on deferred adjudication would contest by means of an appeal a condition of community supervision he or she reasonably expected to meet. [FN5 Here, the *Order of Deferred Adjudication* did not contemplate the payment of court costs and attorney's fees in a lump sum amount. The condition of supervision only required the Appellant to make monthly payments in accordance with a payment arrangement to be made after taking into consideration the Appellant's future income earning ability.] There being no independent judgment to contest, the facts here are clearly distinguishable from *Wiley* where a judgment imposed a clear and specific present obligation to pay a specific amount of attorney's fees. Furthermore, there being no essential factual determination made at the time of the original plea concerning the Appellant's ability to pay the lump sum attorney's fees ordered, this case is distinguishable from *Manuel*.

*Riles v. State*, 417 S.W.3d 606, 611–12 (Tex.App.-Amarillo, 2013) (Pirtle, J., Dissenting).

I dissent.